# Exhibit A

# STATE OF NORTH CAROLINA

CRAVEN County **FILED**

File No. 24CV001700

In The General Court Of Justice
☐ District ☒ Superior Court Division

**Name And Address Of Plaintiff 1**
FIRST CRAVEN SANITARY DISTRICT
c/o Baron & Budd, P.C.
3102 Oak Lawn Ave, Suite 1100
Dallas, TX 75219

2024 NOV 22 P 2: 58

CRAVEN CO. C.S.C.

BY _____

**Name And Address Of Plaintiff 2**

**GENERAL
CIVIL ACTION COVER SHEET**

☒ INITIAL FILING ☐ SUBSEQUENT FILING

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

**VERSUS**

**Name And Address Of Defendant 1**
AGC CHEMICALS AMERICAS INC.
c/o CT Corporation System
160 Mine Lake Ct., Suite 200
Raleigh, NC 27610

Summons Submitted ☒ Yes ☐ No

**Name And Address Of Defendant 2**
AGC, INC. (f/k/a Asahi Glass Co., Ltd.)
c/o Nancy R. Cross
39 Johnson Road
Hayesville, NC 28904

Summons Submitted ☒ Yes ☐ No

**Name And Address Of Attorney Or Party, If Not Represented**
(complete for initial appearance or change of address)
A. Charles Ellis
Ward and Smith, P.A.
Post Office Box 8088
Greenville, NC 27835

| Telephone No. 252-215-4000 | Cellular Telephone No. |
|---|---|

| NC Attorney Bar No. 010865 | Attorney Email Address ace@wardandsmith.com |
|---|---|

☒ Initial Appearance in Case ☐ Change of Address

| Name Of Firm Ward and Smith, P.A. | Fax No. 252-215-4077 |
|---|---|

**Counsel For**
☒ All Plaintiffs ☐ All Defendants ☐ Only: (list party(ies) represented)

☒ Jury Demanded In Pleading ☐ Complex Litigation ☐ Stipulate to Arbitration

## TYPE OF PLEADING

(check all that apply)

☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) (see Note)
☐ Change Venue (CHVN)
☒ Complaint (COMP)
☐ Confession Of Judgment (CNFJ)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) Assess Court Costs
☐ Crossclaim (list on back) (CRSS) Assess Court Costs
☐ Dismiss (DISM) Assess Court Costs
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☐ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interplead (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint (list Third Party Defendants on back) (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☐ Other (specify and list each separately)

**NOTE:** All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.

(Over)

## CLAIMS FOR RELIEF

- ☐ Administrative Appeal (ADMA)
- ☐ Appointment Of Receiver (APRC)
- ☐ Attachment/Garnishment (ATTC)
- ☐ Claim And Delivery (CLMD)
- ☐ Collection On Account (ACCT)
- ☐ Condemnation (CNDM)
- ☐ Contract (CNTR)
- ☐ Discovery Scheduling Order (DSCH)
- ☐ Injunction (INJU)

- ☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP)
- ☐ Medical Malpractice (MDML)
- ☐ Minor Settlement (MSTL)
- ☐ Money Owed (MNYO)
- ☐ Negligence - Motor Vehicle (MVNG)
- ☒ Negligence - Other (NEGO)
- ☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN)
- ☐ Possession Of Personal Property (POPP)

- ☒ Product Liability (PROD)
- ☐ Real Property (RLPR)
- ☐ Specific Performance (SPPR)
- ☒ Other *(specify and list each separately)* Public Nuisance; Private Nuisance; Breach of Implied Warranty of Merchantability; Trespass; Civil Conspiracy; Fraudulent Transfer; Punitive Damages

| Date | Signature Of Attorney/Party |
|---|---|
| 11/21/2024 | *[signature]* |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| No. | ☒ Additional Defendant(s)     ☐ Third Party Defendant(s)<br>See attached sheet for additional Defendants | Summons Submitted |
|---|---|---|
| 3 | ARCHROMA U.S., INC., c/o CT Corporation System, 160 Mine Lake Ct., Suite 200, Raleigh, NC 27615 | ☒ Yes ☐ No |
| 4 | ARKEMA, INC., c/o CT Corporation Service Company, 2626 Glenwood Ave, Suite 550, Raleigh, NC 27608 | ☒ Yes ☐ No |
| 5 | BUCKEYE FIRE EQUIPMENT COMPANY, c/o Kevin J. Bower, 110 Kings Road, Kings Mountain, NC 28086 | ☒ Yes ☐ No |
| 6 | CARRIER GLOBAL CORPORATION, 13995 Pasteur Blvd, Palm Beach Gardens, FL 33418 | ☒ Yes ☐ No |
| 7 | CHEMDESIGN PRODUCTS, INC., 2 Stanton St, Marinefe WI 54143 | ☒ Yes ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

| | |
|---|---|
| | |
| | |
| | |

*Defendant(s) Against Whom Crossclaim Asserted*

| | |
|---|---|
| | |
| | |

## ATTACHMENT TO COVER SHEET

| DEFENDANTS | SUMMONS SUBMITTED |
|---|---|
| CHEMICALS INCORPORATED | Y |
| CHUBB FIRE, LTD. | Y |
| CLARIANT CORPORATION | Y |
| DEEPWATER CHEMICALS, INC. | Y |
| DYNAX CORPORATION | Y |
| JOHN DOE DEFENDANTS 1-49 | Y |
| KIDDE PLC, INC. | Y |
| NATION FORD CHEMICAL COMPANY | Y |
| NATIONAL FOAM, INC. | Y |
| RAYTHEON TECHNOLOGIES CORPORATION (f/k/a United Technologies Corporation) | Y |
| UTC FIRE & SECURITY AMERICAS CORPORATION, INC. | Y |

# STATE OF NORTH CAROLINA

_____CRAVEN_____ County

File No.
24-CVS-

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| Name Of Plaintiff<br>FIRST CRAVEN SANITARY DISTRICT | |
| Address<br>c/o Baron & Budd, P.C., 3102 Oak Lawn Ave, Suite 1100 | **CIVIL SUMMONS** |
| City, State, Zip<br>Dallas, TX 75219 | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| **VERSUS** | G.S. 1A-1, Rules 3 a |
| Name Of Defendant(s)<br>AGC CHEMICALS AMERICAS INC. et al. | Date Original Summons Issued |
| | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| AGC CHEMICALS AMERICAS INC.<br>c/o CT Corporation System<br>160 Mine Lake Ct., Suite 200<br>Raleigh, NC 27610 | |

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers o You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legale ¡NO TIRE estos papeles! Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posibl acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have be served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)<br>A. Charles Ellis<br>Ward and Smith, P.A.<br>Post Office Box 8088<br>Greenville, NC 27835 | Date Issued<br>11-22-2024 | Time<br>2:58 ☐ AM ☒ PM |
|---|---|---|
| | Signature<br>*Michelle J Dove* | |
| | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time<br>☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, i so, what procedure is to be followed.*

(Over)

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| ☐ Acceptance of service. Summons and complaint received by: ☐ Defendant 1. ☐ Other: (type or print name) | Date Accepted | Signature |
|---|---|---|
| | | |

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| ☐ Acceptance of service. Summons and complaint received by: ☐ Defendant 2. ☐ Other: (type or print name) | Date Accepted | Signature |
|---|---|---|
| | | |

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

STATE OF NORTH CAROLINA    IN THE GENERAL COURT OF JUSTICE
                          SUPERIOR COURT DIVISION
CRAVEN COUNTY             FILE NO.: 24-CVS-24CVS01700

| | |
|---|---|
| FIRST CRAVEN SANITARY DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>AGC CHEMICALS AMERICAS INC.;<br>AGC, INC. (f/k/a Asahi Glass Co., Ltd.);<br>ARCHROMA U.S., INC.; ARKEMA, INC.;<br>BUCKEYE FIRE EQUIPMENT<br>COMPANY; CARRIER GLOBAL<br>CORPORATION; CHEMDESIGN<br>PRODUCTS, INC.; CHEMICALS INC.;<br>CHUBB FIRE, LTD.; CLARIANT<br>CORPORATION; DEEPWATER<br>CHEMICALS, INC.; JOHN DOE<br>DEFENDANTS 1-49;DYNAX<br>CORPORATION; KIDDE PLC, INC.;<br>NATION FORD CHEMICAL COMPANY;<br>NATIONAL FOAM, INC.; RAYTHEON<br>TECHNOLOGIES CORPORATION (f/k/a<br>United Technologies Corporation); and<br>UTC FIRE & SECURITY AMERICAS<br>CORPORATION, INC.,<br><br>Defendants. | <br><br>**COMPLAINT AND JURY<br>DEMAND** |

## COMPLAINT

Plaintiff First Craven Sanitary District ("District" or "Plaintiff"), by and through its undersigned counsel, brings this action against Defendants AGC Chemical Americas, Inc., AGC Inc. f/k/a Asahi Glass Co., Archroma US, Inc., Arkema Inc., Buckeye Fire Equipment Company, Carrier Global Corporation, ChemDesign

Products, Inc., Chemicals Inc., Chubb Fire, LTD., Clariant Corp., Deepwater Chemicals, Inc., Dynax Corp., Kidde PLC, Inc.; Nation Ford Chemical Company, National Foam Inc., Raytheon Technologies Corporation f/k/a United Technologies Corporation, UTC Fire & Security Americas Corporation, and John Doe Defendants 1-49 (collectively, "Defendants"). Plaintiff, based on information, belief and investigation of Counsel, alleges as follows:

## I.    SUMMARY OF THE CASE

1.    Plaintiff brings this action against Defendants to recover the considerable costs and damages that have incurred—and that will inevitably continue to incur—as a result of the presence of toxic compounds, identified as per- and polyfluoroalkyl substances ("PFAS"), in Plaintiff's public water supply.

2.    Plaintiff draws water from groundwater wells to provide drinking water to the public.

3.    Plaintiff's water supply has been contaminated with PFAS compounds. PFAS compounds, including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS"), have long been manufactured as components for aqueous film-forming foam ("AFFF")—a product used to control and extinguish aviation, marine, fuel, and other shallow spill fires.

4.    PFAS, including PFOA and PFOS, are known to be toxic, persist in the environment, not biodegrade, move easily through soil, groundwater, and surface water, and pose a significant risk to human health and safety. Both are animal

carcinogens and likely human carcinogens. Indeed, the United States Environmental Protection Agency ("EPA") has stated that "human epidemiology data report associations between PFOA exposure and high cholesterol, increased liver enzymes, decreased vaccination response, thyroid disorders, pregnancy- induced hypertension and preeclampsia, and cancer (testicular and kidney)" and that "there is suggestive evidence of carcinogenic potential for PFOS."[1]

5.      Upon information and belief, at various times throughout the 1960s to present date, Defendants designed, manufactured, marketed, distributed, and/or sold PFOA, PFOS, the chemical precursors of PFOA and/or PFOS, and/or AFFF containing PFOA, PFOS, and/or their chemical precursors (collectively, "Fluorosurfactant Products") throughout the United States, including in

North Carolina.

6.      At all relevant times, upon information and belief, Defendants knew, or reasonably should have known, about the inherent risks and dangers involved in the use of PFAS compounds in their products—including that both PFOA and PFOS are mobile in water, not easily biodegradable, highly persistent in the environment, and present significant and unreasonable risks to both human health and the

---

[1] *See* EPA, *Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA)*, EPA Document Number: 822-R-16-005 (May 2016) at 16, available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P100OM4O.txt (last accessed May 28, 2024); EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document No. 822-R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed May 28, 2024).

9.     Through this action, Plaintiff now seeks to recover all available damages arising from the continuous and ongoing contamination of Plaintiff's Property caused by Defendants' actions as asserted herein. Such damages include, but are not limited to, the past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment of Plaintiff's Property.

## II.     PARTIES

### A.     *PLAINTIFF*

10.     First Craven Sanitary District is located in Craven County, North Carolina.  The District's primary address is 560 NC Highway 55 East, New Bern, North Carolina 28560.

### B.     *DEFENDANTS*

11.     Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products that have contaminated and continue to contaminate Plaintiff's Property, causing irreparable harm.

12.     **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

13.     **AGC AMERICA:** Defendant AGC Chemical Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E.

environment. Nevertheless, Defendants made a conscious choice to manufacture, market, sale, and otherwise place Fluorosurfactant Products into the U.S. stream of commerce for decades, all while knowing PFAS compounds would be inevitably released into the environment—for instance, in the use of AFFF for fire protection, training, and response activities, even when used in the manners directed and intended by the manufacturer—and concealing their knowledge of the risks involved.

7.    At all relevant times, Plaintiff did not know, nor should it have reasonably known, of the ongoing contamination of its Property through the use of Defendants' Fluorosurfactant Products, as Defendants did not disclose the toxic nature and harmful effects of their Fluorosurfactant Products. Notably, Plaintiff's water, water sources, water supply, water storage, water treatment plant and delivery system infrastructure are collectively referred to as "Plaintiff's Property" in this Complaint.

8.    As a result of Defendants' unreasonable acts and omissions, PFAS compounds have entered into groundwater from which Plaintiff draws water to provide for its citizens and customers and have contaminated Plaintiff's Property— thereby subjecting Plaintiff, its customers, and the general public to the inherent danger of these chemicals. As the manufacturers and sellers of Fluorosurfactant Products, Defendants are responsible for the PFAS contaminants affecting Plaintiff's Property.

Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

14. **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

15. **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

16. **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant manufactured and sold AFFF that contained PFOA.

17. **CARRIER:** Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

18.     **CHEM INC.:** Defendant Chemicals Incorporated ("Chem Inc.") is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521.

19.     **CHEMDESIGN:** Defendant Chemdesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

20.     **CHUBB:** Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to Chubb Fire & Security Ltd., Chubb Security, P.L.C., Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc. Chubb is part of UTC Climate, Controls & Security, a unit of United Technologies Corporation.

21.     **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

22.     **DEEPWATER:** Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation with its principal place of business located at

196122 E County Road 40, Woodward, Oklahoma 73801.

23.     **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

24.     **KIDDE PLC, INC.:** Defendant Kidde PLC, Inc. ("Kidde PLC") is a Delaware corporation with its principal place of business located at 9 Farm Springs Road, Farmington, Connecticut. Upon information and belief, Kidde PLC was part of UTC Fire & Security Americas Corporation, Inc. Upon information and belief, Kidde PLC has conducted and/or availed itself of doing business throughout the United States, including in North Carolina.

25.     **NATIONAL FOAM:** Defendant National Foam, Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. National Foam manufactures the Angus Fire brand of products and is the successor-in-interest to Angus Fire Armour Corporation (collectively, "National Foam/Angus Fire"). This Defendant manufactured and sold AFFF that contained PFOA.

26.     **NATION FORD:** Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715.

27.     **RAYTHEON TECHNOLOGIES CORP.:** Defendant Raytheon Technologies Corporation (f/k/a United Technologies Corporation) ("Raytheon Tech

f/k/a United Tech") is a Delaware corporation with its principal place of business at 10 Farm Springs Road, Farmington, Connecticut 06032.

28.     UTC: Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation with its principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. UTC was a subsidiary of United Technologies Corporation.

29.     Upon information and belief, Defendant John Does 1-49 were manufacturers and/or sellers of AFFF products. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time the District will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

30.     All of the foregoing Defendants, upon information and belief, have previously conducted and/or currently conduct their business throughout the United States. Moreover, some of the foregoing Defendants, if not all, have conducted and/or are currently conducting business in the state of North Carolina.

31.     Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

32.     The term "Defendants," without naming any specific one, refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers,

directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.   JURISDICTION & VENUE

33.   This Court has jurisdiction pursuant to N.C.G.S. § 7A-243 because the amount in controversy exceeds twenty-five thousand dollars ($25,000,00).

34.   This Court has jurisdiction over Defendants because, based on information and belief, each is a corporation or other business that has sufficient minimum contacts in North Carolina, or otherwise intentionally avails itself of the North Carolina market either through the distribution or sale of products containing PFAS in the State of North Carolina or by having a manufacturing, distribution or other facility located in North Carolina so as to render the exercise of jurisdiction over it by the North Carolina courts consistent with traditional notions of fair play and substantial justice.

35.   Venue is appropriate in this county pursuant to N.C.G.S. §§ 1-76-1-80 as facts giving rise to the Plaintiff's causes of action arose in Craven County, and the plaintiff is situated in, resides, and does business in Craven County.

## IV. FACTUAL ALLEGATIONS

A. *THE PFAS CONTAMINANTS AT ISSUE: PFOA AND PFOS*

36.     Both PFOA and PFOS fall within a class of chemical compounds known as per- and polyfluoroalkyl substances ("PFAS"). PFAS are composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature.

37.     PFAS are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

38.     PFOA and PFOS are stable, man-made chemicals. They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

39.     Both PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They

have been found globally in water, soil and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[2]

40.     Moreover, PFOA and PFOS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[3]

41.     Notably, from the time these two compounds were first produced, information has since emerged showing negative health effects caused by exposure to PFOA and PFOS. According to the EPA, "studies indicate that exposure of PFOA and PFOS over certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).[4] The EPA has warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.[5]

---

[2] See id.

[3] See id.

[4] See EPA, *Fact Sheet PFOA & PFOS Drinking Water Health Advisories*, EPA Document Number: 800-F-16-003, available at available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P100OR9W.txt (last accessed May 28, 2024).

[5] See EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed May 28, 2024).

42.     Additionally, the EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have contaminated water supplies." In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example [...] an airfield at which [PFOA/PFOS] were used for firefighting."[6]

43.     EPA continues to research the effects of PFAS. In June 2022, after evaluating over 400 studies published since 2016 and applying human health risk assessment approaches, tools, and models EPA concluded that the new data indicates that the levels of PFOA and/or PFOS exposure at which negative outcomes could occur are much lower than previously understood when the agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt). EPA announced new Interim Updates Health Advisory levels for PFOA of 0.004 ppt and 0.02 ppt for PFOS.[7]

44.     EPA recently promulgated Maximum Contaminant Levels ("MCLs") for several PFAS compounds. The individual MCLs for PFOA and PFOS are 4 parts per trillion (ppt); for PFHxS, PFNA, and HFPO-DA, each individual MCL is 10 ppt. In addition, EPA is imposing a Hazard Index (HI) of 1 (unitless) as the MCL for any

---

[6] *See* note 4, *supra.*
[7] EPA, *Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)*, EPA Document Number 822-F-22-002, available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P10154ST.txt (last accessed May 28, 2024).

mixture containing two or more of PFHxS, PFNA, HFPO-DA, and PFBS.[8]  These regulations become effective on June 25, 2024.

45.  Both PFOA and PFOS have been detected in Plaintiff's water supply at concentrations exceeding EPA's MCLs.

B.  *AQUEOUS FILM-FORMING FOAM (AFFF) WAS A PRODUCT CONTAINING PFOS AND/OR PFOA AT THE RELEVANT TIME PERIOD*

46.  Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

47.  Generally, AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

48.  The AFFF products made by Defendants during the relevant time contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS.   All other

---

[8] EPA. *PFAS National Primary Drinking Water Regulation*, 89 Fed. Reg. 32532 (April 26, 2024), available at https://www.federalregister.gov/documents/2024/04/26/2024-07773/pfas-national-primary-drinking-water-regulation (last accessed May 28, 2024).

Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

49. When used as the Defendants intended and directed, the AFFF manufactured and/or sold by the Defendants released PFOA and/or PFOS into the environment.

50. Once PFOA and PFOS are free in the environment, they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions, and they are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, air, groundwater, and surface water.

51. Notably, AFFF can be made without PFOA and PFOS. As such, fluorine-free foams do not release PFOA and/or PFOS into the environment.

52. Despite having knowledge of this fact—as well as having knowledge regarding the toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS, which has ultimately led to the ongoing contamination and damages to Plaintiff's Property.

53. Defendants' Fluorosurfactant Products have been used for their intended purposes in the process of fire protection, training, and response activities within Connecticut for many years. During these activities, Defendants' Fluorosurfactant Products were used as directed and intended by the manufacturer, which allowed PFOA and PFOS to migrate through the subsurface and into the

groundwater and surface water, enter into Plaintiff's property, thereby contaminating Plaintiff's intakes and property, as well as causing other extensive and ongoing damages to Plaintiff's Property.

54.     Due to the chemicals' persistent nature, among other things, these chemicals have caused, and continue to cause, significant injury and damage to Plaintiff and Plaintiff's Property.

C.     *DEFENDANTS' KNOWLEDGE AND CONCEALMENT OF THE DANGERS INVOLVED*

55.     On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface, mix easily with groundwater and surface waters, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

56.     At all times pertinent herein, Defendants also knew or should have known that PFOA and PFOS present a risk to human health and could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

57.     For instance, in 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M

estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[9]

58.    By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

59.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[10]

60.    Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[11]

---

[9] See Office of Minnesota Attorney General, Exhibit List, No. 1588, Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1588.pdf (last accessed May 28, 2024).

[10] See DuPont, *C-8 Blood Sampling Results,* available at https://static.ewg.org/files/PFOA_013.pdf?_gl=1*anldwl*_ga*NTgxNzgzMTc3LjE2ODl2ODk5ODk.*_ga_CS21GC49KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wLjAuMA..&_ga=2.26293428.885409355.1683587869-581783177.1682689989 (last accessed May 28, 2024).

[11] See 3M, Internal Memorandum, *Organic Fluorine Levels,* (August 31, 1984), available at

61.    Notwithstanding their respective knowledge of the dangers involved with AFFF containing PFOA and/or PFOS, Defendants negligently and carelessly: (1) designed, manufactured, marketed, and/or sold AFFF containing PFOA and/or PFOS; (2) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil and/or waste water disposal systems), thus improperly permitting PFOA and/or PFOS to contaminate soil, groundwater, and surface waters; (3) failed to recall and/or warn users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of soil and water contamination as a result of the standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF containing PFOA and/or PFOS.

62.    As a direct result of Defendants' acts alleged in this Complaint, Plaintiff's property has been contaminated, and will continue to be contaminated, with PFOA and PFOS. This has created a significant environmental and public health hazard until such contamination may be remediated. As a direct and proximate result, Plaintiff must assess, evaluate, investigate, monitor, remove, clean

---

https://static.ewg.org/files/226-0483.pdf?_gl=1*1u237yp*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk.*_ga_CS21GC49KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wLjAuMA..&_ga=2.39402538.885409355.1683587869-581783177.1682689989 (last accessed May 28, 2024).

up, correct, and remediate PFOA and PFOS contamination of its property at significant expense, loss and damage to Plaintiff.

63.     Defendants had a duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products, but they breached this duty. Defendants moreover breached their duty to minimize the environmental harm caused by PFOA and PFOS. Moreover, Defendants failed to warn Plaintiff of the known risks for environmental and health hazards arising from the usage of Defendants' Fluorosurfactant Products in their intended manner for its intended purpose.

D.     *THE HARM TO PLAINTIFF RESULTING FROM PFOA AND PFOS CONTAMINATION*

64.     PFOA and PFOS have been detected in Plaintiff's water supplies.

65.     The detection and/or presence of PFOA and PFOS, and the threat of further detection and/or presence of PFOA and PFOS, in Plaintiff's Property in varying amounts and at varying times has resulted, and will continue to result, in significant injury and damage to Plaintiff. It is the contention of Plaintiff that any detectible level of PFOA and/or PFOS on Plaintiff's Property requires investigation, remediation, and monitoring.

66.     Plaintiff has conducted and continues to conduct sampling, studies, and investigations related to PFAS, which requires funding by Plaintiff, including costs

to conduct sampling, costs for its personnel to supervise the assessments, costs to develop PFAS treatment approaches, and costs to analyze available alternatives.

67.    The invasion of Plaintiff's Property with PFOA and PFOS is continuous and recurring, as new contamination flows regularly and constantly into Plaintiff's Property each day—the result of which is a new harm to the Plaintiff and its property in each and every occurrence.

68.    The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, the limited subterranean supplies of fresh drinking water on which Plaintiff's intakes depend. Plaintiff's interests in protecting the quality of its citizens' limited drinking water supplies constitutes a reason for seeking damages sufficient to restore such drinking water supplies to their pre-contamination condition.

69.    Through this action, Plaintiff seeks to recover damages (including but not limited to compensatory, punitive, and/or consequential damages) arising from continuous and ongoing contamination of Plaintiff's Property by Defendants' Fluorosurfactant Products. Such damages moreover include, but are not limited to, the past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment of Plaintiff's Property.

## FIRST CAUSE OF ACTION

## PUBLIC NUISANCE

70.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

71.     Defendants manufactured, distributed, marketed, and promoted PFAS-containing products including AFFF in a manner that created or participated in creating a public nuisance that is harmful to health and obstructs the free use of Plaintiff's Property.

72.     The presence of PFAS interferes with the use of Plaintiff's Property as a source of drinking water supply.

73.     The presence of PFAS causes significant costs, inconvenience and annoyance to Plaintiff, who is charged with supplying potable drinking water to residences, schools, businesses, churches, and public buildings.

74.     The condition affects a substantial number of people in the community who rely upon Plaintiff to provide water for residential, commercial, and recreational purposes and interferes with the rights of the public at large to clean and safe drinking water resources and environment.

75.     An ordinary person would be reasonably annoyed or disturbed by the presence in public drinking water of toxic PFAS that endanger human health and degrade water quality.

76. The seriousness of the environmental and human health risk far outweighs any social utility of Defendants' conduct in manufacturing PFAS and PFAS-containing products and concealing the dangers posed to human health and the environment.

77. Plaintiff has suffered and will continue to suffer harm that is different from the type of harm suffered by the general public, and Plaintiff has incurred substantial costs to remove PFAS from its water supply.

78. Plaintiff did not consent to the conduct that resulted in the contamination of Plaintiff's Property.

79. Defendants' conduct was a substantial factor in causing the harm to Plaintiff.

80. Defendants knew or, in the exercise of reasonable care, should have known that the manufacture and sale of PFAS-containing products was causing the type of contamination now found in and around Plaintiff's Property. Defendants knew that PFAS would contaminate water supplies and are associated with serious illnesses and cancers in humans. Defendants thus knew, or should have known, that PFAS contamination would seriously and unreasonably interfere with the ordinary comfort, use, and enjoyment of public water supply & intakes.

81. As a direct and proximate result of Defendants' creation of a public nuisance, Plaintiff has suffered, and continues to suffer, monetary damages to be proven at trial.

82. Defendants' conduct was malicious, oppressive, wanton, willful, intentional, and shocks the conscience, warranting punitive and exemplary damages, because they manufactured, promoted, sold, and supplied PFAS-containing products including AFFF, knowing that these products would release PFAS that are toxic, cannot be contained, and last for centuries.

## SECOND CAUSE OF ACTION

## PRIVATE NUISANCE

83. Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

84. Plaintiff's Property has been contaminated by PFOA and/or PFOS as a direct and proximate result of the acts and omissions of Defendants as set forth above.

85. PFAS contamination is a substantial and unreasonable interference with the use of Plaintiff's Property to provide potable drinking water. The chemicals contaminate Plaintiff's Property and threaten the health of everyone in the community who relies upon Plaintiff to provide potable water.

86. PFAS contamination caused by Defendants' conduct has damaged Plaintiff's Property and interfered with the ordinary safety, use, benefit, and enjoyment of Plaintiff's property.

## THIRD CAUSE OF ACTION

## PRODUCTS LIABILITY- INADEQUATE DESIGN (G.S. § 99B-6)

87.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

88.    Plaintiff was harmed by PFAS-containing products including AFFF which were designed, manufactured, sold, and distributed by Defendants, and which were defectively designed, did not include sufficient instructions, and did not include sufficient warning of potential safety hazards.

89.    The design of Defendants' PFAS-containing products were defective because, at the time of the products' manufacture, Defendant acted unreasonably in designing or formulating the product, and this conduct was a proximate cause of the Plaintiff's harm.

90.    In addition, at the time the products left Defendants' control, each Defendant unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product.

91.    Moreover, at the time the product left Defendants' control, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design.

92. The design of Defendants' PFAS-containing products caused harm to Plaintiff.

93. The design of Defendants' PFAS-containing products was a substantial factor in causing harm to Plaintiff.

94. The gravity of the huge environmental harm resulting from the use of Defendants' PFAS-containing products was, is, and will be enormous because PFAS contamination is widespread, persistent, and toxic.

95. The likelihood that this harm would occur was, is, and will be very high because Defendants knew and/or should have known that Defendants' PFAS-containing products were toxic, could not be contained, and do not readily degrade in the environment.

96. Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

97. Defendants, their officers, directors, and managing agents, engaged in despicable conduct and acted or failed to act with malice, oppression, and fraud, warranting punitive or exemplary damages.

## FOURTH CAUSE OF ACTION

## PRODUCTS LIABILITY- FAILURE TO WARN (G.S. § 99B-5)

98. Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

99.   Plaintiff was harmed by PFOA, PFOS, and other PFAS-containing products that Defendants designed, manufactured, sold, and distributed.

100.   Defendants' PFAS-containing products were designed, manufactured, sold, and distributed without adequate warning of toxicity, potential human health risks, and environmental hazards.

101.   Defendants' PFAS-containing products were designed, manufactured, sold, and distributed without instructions to prevent contamination of soil and water and the resulting potential human health risks and environmental hazards.

102.   The potential environmental hazard and toxicity risks of Defendants' PFAS- containing products were known and/or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific community and/or in light of Defendants' superior knowledge about their products at the time of design, manufacture, sale, and distribution.

103.   The potential environmental hazard and toxicity risks presented an unreasonably dangerous condition when Defendants' PFAS-containing products were and are used or misused in an intended or reasonably foreseeable way, and Defendants knew that this condition posed a substantial risk of harm to reasonably foreseeable users and bystanders including public water providers like Plaintiff.

104.   The risks of PFAS are not a matter of common knowledge. Ordinary consumers and third-parties would not have recognized the potential risks.

105.   Defendants failed to adequately warn or instruct of the potential risks.

106. Plaintiff was, is, and will be harmed.

107. The lack of sufficient instructions or warnings was a substantial factor in causing Plaintiff's harm.

108. Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

109. Defendants, their officers, directors, and managing agents, engaged in despicable conduct and acted or failed to act with malice, oppression, and fraud, warranting punitive or exemplary damages.

## FIFTH CAUSE OF ACTION

## NEGLIGENCE

110. Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

111. Defendants designed, manufactured, sold, and distributed PFAS-containing products.

112. Defendants' PFAS-containing products were designed, manufactured, sold, and distributed without adequate warning of toxicity, potential human health risks, and environmental hazards.

113. Defendants' PFAS-containing products were designed, manufactured, sold, and distributed without instructions to prevent contamination of soil and water and the resulting potential human health risks and environmental hazards.

114. Defendants were negligent by not using reasonable care to warn or instruct about the risks associated with PFAS-containing products.

115. Defendants knew or reasonably should have known that their PFAS-containing products were dangerous or likely to be dangerous when used or misused in a reasonably foreseeable manner.

116. Defendants knew or reasonably should have known that users and third parties would not realize the danger.

117. At all times, it was reasonably foreseeable to Defendants that when used as intended, PFAS-containing products would cause contamination of soil and water and would present risks to human and environmental health.

118. Defendants failed to adequately warn of the danger or instruct on the safe use of PFAS-containing products.

119. A reasonable chemical manufacturer, seller, distributor, under the same or similar circumstances would have warned of the danger or instructed on the safe use of PFAS-containing products.

120. Plaintiff was, is, and will be harmed.

121. Defendants' failure to warn or instruct proximately caused Plaintiff's harm.

## SIXTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (G.S. § 25-2-314)

122. Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

123. At all relevant times, Defendants were in the business of designing, manufacturing, selling, and distributing PFAS-containing products such as those at issue here.

124. Defendants warranted that their PFAS-containing products are merchantable.

125. Defendants designed, manufactured, sold, and distributed PFAS-containing products without adequate warning of toxicity, potential human health risks, and environmental hazards.

126. Defendants' PFAS-containing products were defective or otherwise unmerchantable when they left Defendants' control.

127. When used for the ordinary purposes for which such PFAS-containing products were used and intended, PFAS-containing products were defective or otherwise unmerchantable because PFAS compounds escaped from those products, causing contamination of soil and water and presenting risks to human and environmental health.

128. Defendants breached their implied warranty of merchantability because the goods are not fit for the ordinary purposes for which such goods are used.

129. Defendants breached their implied warranty of merchantability because the PFAS-containing products were not packaged and labeled with the appropriate warnings about contamination and resulting health risks or with instructions that would have prevented the contamination.

130. Defendants became aware of the human health risks and environmental dangers presented by PFAS-containing products by no later than the year 2000.

131. Plaintiff was, is, and will be harmed.

132. Defendants' breach of the implied warranty of merchantability proximately caused Plaintiff's harm.

133. Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

134. Defendants, their officers, directors, and managing agents, engaged in despicable conduct and acted or failed to act with malice, oppression, and fraud, warranting punitive or exemplary damages.

## SEVENTH CAUSE OF ACTION

## TRESPASS

144. Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

145. Plaintiff owns and operates real property including drinking water production intakes that draw from groundwater supplies and associated pumping,

storage, treatment and distribution facilities and equipment. Plaintiff has significant property interests in the waters it appropriates and uses and in its distribution infrastructure.

146. Defendants intentionally, recklessly, and negligently caused PFAS to enter into the groundwaters, aquifers, surface waters, and intakes operated by Plaintiff.

147. Plaintiff did not give permission for the entry.

148. Plaintiff was, is, and will be actually harmed by the entry of PFAS onto its property.

149. Defendants' conduct proximately caused Plaintiff's harm.

150. Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

151. Defendants, their officers, directors, and managing agents, engaged in despicable conduct and acted or failed to act with malice, oppression, and fraud, warranting punitive or exemplary damages.

## EIGHTH CAUSE OF ACTION

## CIVIL CONSPIRACY

152. Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

153. At all times relevant to this lawsuit, Defendants actually knew of the

hazards that PFOA and PFOS posed to the environment, including Plaintiff's Property.

154.    Beginning in the 1960s and continuing through the date of the filing of this Complaint, Defendants agreed to engage in unlawful and wrongful acts that caused damage to the Plaintiff. Each Defendant performed at least one overt act in furtherance of this conspiracy. Specifically, Defendants colluded for the avowed purpose of providing information about AFFF products containing PFOA and/or PFOS to the public and the government, with the true, unlawful purpose of:

a.    intentionally misrepresenting to the EPA and the public that AFFF containing PFOA and/or PFOS was safe and did not pose a risk to human health and the environment;

b.    concealing the dangers of AFFF containing PFOA and/or PFOS, including the products' characteristics and their propensity to contaminate soil, groundwater, and surface water from the government and public by, among other means, repeatedly misrepresenting how products containing PFOA and/or PFOS were being disposed of;

c.    concealing the dangers of PFOA and/or PFOS from consumers and the public; and

d.    using their considerable resources to fight legislation concerning PFOA and PFOS.

155. As a direct and proximate result of Defendants' conspiracy, Defendants' AFFF products at all times relevant to this litigation have:

    a. posed and continue to pose a threat to Plaintiff's Property;

    b. contaminated and will continue to contaminate Plaintiff's Property;

    c. contaminated and will continue to contaminate the soil, groundwater, and surface waters on and within the vicinity of Plaintiff's Property;

    d. required and will continue to require testing and monitoring of Plaintiff's Property for PFOA and PFOS contamination;

    e. required or will require remediation of PFOA and PFOS contamination or, where remediation is impracticable or insufficient for Plaintiff, removal and disposal of the contamination;

    f. diminished Plaintiff's confidence in, and the use and enjoyment of, Plaintiff's Property;

    g. diminished Plaintiff's Property value due to actual, impending, and/or threatened PFOA and PFOS contamination; and

    h. caused and/or will cause Plaintiff to sustain substantially increased damages and expenses resulting from the loss of the safety, use, benefit and/or enjoyment of its property.

## NINTH CAUSE OF ACTION

## FRAUDULENT TRANSFER (DUPONT AND CHEMOURS)

156. Plaintiff realleges and reaffirms all allegations set forth in the

preceding paragraphs.

157. Plaintiff seeks equitable and other relief pursuant to the Uniform Fraudulent Transfer Act against DuPont.

158. Upon information and belief, in February 2014, DuPont formed The Chemours Company as a wholly-owned subsidiary, and used it to spin off DuPont's "Performance Chemicals" business line in July 2015.

159. Upon information and belief, at the time of the spinoff, DuPont's Performance Chemicals division contained the AFFF and/or PFAS business segments. In addition to the transfer of the Performance Chemicals division, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFAS.

160. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

161. Upon information and belief, as a result of the transfer of assets and liabilities described in this Complaint, DuPont limited the availability of assets to cover judgements for all of the liability for damages and injuries from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

162.     Upon information and belief, DuPont has (a) acted with intent to hinder, delay and defraud parties, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were unreasonably small in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

163.     Upon information and belief, DuPont engaged in acts in furtherance of a scheme to transfer its assets out of the reach of parties, such as the Plaintiff, that have been damaged as a result of DuPont's actions as described in this Complaint.

164.     Upon information and belief, DuPont and Chemours acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

165.     Plaintiff seeks to avoid the transfer of DuPont's liabilities for the claims brought in this Complaint and to hold DuPont jointly and severally liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

166.     Plaintiff further reserves such other rights and remedies that may be available to it as may be necessary to fully compensate Plaintiff for the damages and injuries it has suffered as alleged in this Complaint.

## PUNITIVE DAMAGES

167.  Under the applicable laws of the State of North Carolina, Plaintiff seeks Punitive damages due to the wanton and willful acts and/or omissions of Defendants as set forth and alleged throughout this Complaint.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.  Compensatory damages according to proof including, but not limited to:

a.  costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS contamination on and within Plaintiff's Property;

b.  costs and expenses related to the past, present, and future treatment and remediation of PFAS contamination of Plaintiff's Property or, in the alternative, the costs and expenses associated with and related to the removal and disposal of the contamination; and

c.  costs and expenses related to the past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFAS on and within Plaintiff's Property.

d.  Avoiding the transfer of DuPont's liabilities for the claims brought in this Complaint;

2.  Punitive damages;

3.     Consequential damages;

4.     Costs, disbursements and attorneys' fees of this lawsuit;

5.     Pre-judgment and post-judgment interest; and

6.     Any other and further relief as the Court deems just, proper, and

equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial.


This the 21st day of November, 2024.

Respectfully submitted,

A. Charles Ellis (NC Bar No. 10865)
WARD AND SMITH, P.A.
Post Office Box 8088
Greenville, NC 27835-8088
Telephone: 252-215-4009
Email: ace@wardandsmith.com
Email:  docket@wardandsmith.com*

Scott Summy (NC Bar No. 27171)
Brett Land (NC Bar No. 60697)
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 521-3605
ssummy@baronbudd.com
bland@baronbudd.com

J. Harold Seagle (NC Bar No. 8017)
SEAGLE LAW, PLLC
Post Office Box 15307
Asheville, NC 28813
haroldseagle@charter.net
828-545-7777

Philip F. Cossich, Jr. (LA Bar No. 1788)
Brandon J. Taylor (LA Bar No. 27662)
Christina M. Cossich (LA Bar No. 32407)
COSSICH, SUMICH, PARSIOLA
& TAYLOR, LLC
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Telephone: (504) 394-9000
pcossich@cossichlaw.com
btaylor@cossichlaw.com
ccossich@cossichlaw.com

Scott Davis (NC Bar No. 20920)
Davis Hartman Wright LLP
209 Pollock St.
New Bern, NC 28560
msd@dhwlegal.com

David Baxter (NC Bar No. 39525)
Sumrell Sugg, P.A.
416 Pollock St.
New Bern, NC 28560
dbaxter@nclawyers.com

*Attorneys for Plaintiff*

*This email address must be used in order to effectuate service under Rule 5 of the North Carolina Rules of Civil Procedure.

**Email address to be used for all communications other than service.